# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

THOMAS JAMES HARPER,

    Plaintiff,

v.                                             Case No. 04-CV-73007-DT

WAYNE COUNTY; NURSE TORRENCE; MR.
VEASLEY; MR. D. PARSON BADGE 4153; MR.
WALKER BADGE 1487; MR. PENDERGRASS
BADGE 1227; CZAMECKI; McMURRAN; A.
SMITH; ROPER; and WATERMAN, and
CERTAIN UNKNOWN EMPLOYEES/GUARDS
OF WAYNE COUNTY JAIL, in their individual
and official capacities,

    Defendants.
                                                      /

## OPINION AND ORDER GRANTING DEFENDANTS'
## "MOTION FOR SUMMARY JUDGMENT"

      Pending before the court is Defendants' "Motion for Summary Judgment." Defendants' motion has been fully briefed and the court has determined that no hearing is required. E.D. Mich. LR 7.1(e)(2). For the reasons stated below, the court will grant Defendants' motion.

## I. BACKGROUND

      The incident that precipitated this action occurred on September 21, 2002. (Pl.'s Dep. at 19; Defs.' Mot. at Ex. D.) On this date, Plaintiff Thomas Harper and three others were assaulted and injured by five or six inmates while all were being housed at the Wayne County Jail, Division One, 12 Northeast small ward ("12 NE"). (Pl.'s Dep. 60-61; Pl.'s Resp. at 2.) The altercation occurred at approximately 7:00 p.m. and lasted about fifteen minutes. (Pl.'s Dep. at 33, 60.) Plaintiff was the last victim to be attacked and

was kicked, punched, kneed, and struck various times.  (*Id.* at 20-22, 24-25, 27-29.)  Plaintiff alleges that the incident involved screaming and other loud noises.  (*Id.* at 79*.*)  As a result of the beating, Plaintiff fell unconscious and awoke in a pool of blood.  (*Id.* at 29-32, 81)  Plaintiff claims that he then went to his cell and waited for what he believes was one and one-half hours for a deputy to return to the guard station.  (*Id.* at 34.)

The parties do not dispute that Officer Parson was not in the duty station at the time of the attack.  (Pl.'s Dep. at 34; Parson Dep. at 38.)[1]  Once Defendant Parson returned at approximately 9:30 p.m., Plaintiff approached the duty station, knocked on the glass, and told Parson that he needed medical attention.  (Defs.' Mot. at Ex. D; Pl.'s Dep. at 45.)  Defendant Parson then walked Plaintiff to a nearby bathroom and asked him what happened.  (Pl.'s Dep. at 46-47; Parson Dep. at 41.)  Defendant Parson then placed Plaintiff in a holding cell for approximately thirty to forty-five minutes, before moving him to the second floor medical ward where he was placed in another holding cell.  (Pl.'s Dep. at 51-53.)  Plaintiff does not recall whether he received treatment at the medical ward, although various passing medical personnel observed his injuries.  (*Id.* at 53-55.)

At approximately 11:42 p.m. the same day, Plaintiff was transported and registered at Detroit Receiving Hospital where he received treatment for a closed head injury, abrasions, and a nasal bone fracture.  (Pl.'s Mot. at Ex. J; Defs.' Mot. at 6, Ex.

---

[1]Plaintiff claims that he never saw any of the other guards performing rounds during the incident, however, he acknowledged in his deposition testimony that it was possible that someone could have walked in or out of the observation booth without his knowledge during the relevant time period.  (Pl.'s Dep. at 39.)

G.) Plaintiff's treatment included x-rays of his nose, a CT scan of his head, and pain medication. (*See id.*)

Plaintiff alleges that Defendants' deliberate indifference towards Plaintiff's risk of injury and subsequent failure to adequately administer medical care to Plaintiff constitutes a violation of Plaintiff's constitutional rights. (Pl.'s Compl. at ¶¶ 27, 35.)

## II. STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate." *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The existence of some factual dispute, however, does not defeat a properly supported motion for summary judgment; the disputed factual issue must be material. *See id.* at 252 ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict-'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'"). A fact is "material" for purposes of summary judgment when proof

of that fact would have the effect of establishing or refuting an essential element of the claim or a defense advanced by either party. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984).

In considering a motion for summary judgment, the court must view the facts and draw all reasonable inferences from the admissible evidence presented in a manner most favorable to the nonmoving party. *Dunigan v. Noble*, 390 F.3d 486,492 (6th Cir. 2004) ("[W]e must determine 'not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it upon whom the *onus* of proof is imposed.'") The court does not weigh the evidence to determine the truth of the matter, but must determine if the evidence produced creates a genuine issue for trial. *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003).

### III.  DISCUSSION

#### A.  Deliberate Indifference to a Substantial Risk of Harm

In Count I of his Complaint, Plaintiff claims that Defendants acted with "deliberate indifference, practiced and/or permitted customs and/or policies which resulted in and were the moving force behind the violations of Plaintiff's Fourteenth Amendment, Due Process constitutional rights." (Pl.'s Compl. at ¶ 25.) Plaintiff contends that "these customs and/or policies included, but were not limited to [a] failure to supervise its police officers . . . , failure to train its guards . . ., [and a] failure to supervise, review, and/or discipline its guards whom Wayne County knew or should have known were acting contrary to policies . . . safeguarding the health, safety, and well-being of citizens in its custody." (*Id.* at ¶ 26.)

4

The Supreme Court has recognized the responsibility of the courts "to scrutinize claims of cruel and unusual confinement." *Rhodes v. Chapman*, 452 U.S. 337, 352 (1981). In addition, in *Farmer v. Brennan,* 511 U.S. 825, 833 (1994), the Court noted that "lower courts have uniformly held . . . [that] 'prison officials have a duty ··· to protect prisoners from violence at the hands of other prisoners.'" (citing *Cortes-Quinones v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir. 1988).

> Having incarcerated "persons [with] demonstrated proclivit[ies] for antisocial criminal, and often violent, conduct," having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course. Prison conditions may be "restrictive and even harsh," but gratuitously allowing the beating or rape of one prisoner by another serves no "legitimate penological objectiv[e]," any more than it squares with "'evolving standards of decency.'"

*Id.* (citations omitted). Indeed, a prison official's "deliberate indifference" to a substantial risk of serious harm to an inmate violates the Eighth Amendment. *Id.* at 828. It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety, as a prison official violates the Eighth Amendment through his deliberate indifference only when two requirements are met. *Id.* at 833. First, "a prison official's act or omission must result in the denial of the 'minimal civilized measure of life's necessities' . . . [and] [f]or a claim . . . based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* at 834. Second, "to violate the Cruel and Unusual Punishments Clause, a prison official must have a 'sufficiently culpable state of mind.'" *Id.* (citations omitted). Under this second prong, it is enough that the "official acted or failed to act despite his knowledge of a

5

substantial risk of serious harm." *Id.* at 842.  Negligence, however, even "gross negligence" by prison officials, is not enough to support a deliberate indifference claim. *Ribble v. Lucky,* 817 F. Supp. 653, 655 (E.D. Mich. 1993).

Plaintiff has not presented evidence sufficient for him to bear his burden as to the second (notice) prong.  On the contrary, Plaintiff testified that he had no previous problems or altercations with the other inmates on 12NE before the attack on September 21, 2002.  For example, in his deposition, Plaintiff testified as follows:

> Q: Okay.  And before September 21, 2002, you didn't know that these guys were going to jump you; did you?
> A: No.
>
> Q: Before these guys assaulted you on the 21st of September 2002, what was your relationship with these guys?  I mean, did you have a pretty good relationship with these guys?
> A: It was just like anywhere else, you know what I'm saying?  We played ball, we talked about the streets.  And pretty much that was it, you know.  No personal relationships or nothing like that.
>
> Q: No personal animosity?
> A: No.
>
> Q: As far as you're concerned, did this attack pretty much come out of the blue?
> A: Yes.

(Pl.'s Dep. at 42.)  When Defendant Parson was asked directly about any notice that he may have had relating to the incident, he testified that he did not have any notice that this incident or this assault was going to happen to Plaintiff.  (Parson Dep. at 77.)

In support of the notice prong, Plaintiff argues that "the inmates housed on 12 NE had assaultive criminal histories, yet they were left unobserved and alone while Defendants played video games, played on the Internet, or otherwise failed to keep the

6

inmates safe." [2]  (Pl.'s Resp. at 14.)  More than a generalized risk posed by a prison population is required to trigger notice of a substantial risk of harm to an inmate.  The official's conduct "must demonstrate deliberateness tantamount to an intent to punish."  *Hicks v. Frey*, 992 F.2d 1450, 1451 (6th Cir. 1993) (citations omitted).

In *Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992), the *Gibson* court held that "the fact that the defendants knew that SPSM housed many violent prisoners and that prison violence did occur is not sufficient to constitute deliberate indifference."  The *Gibson* court held that "there was no evidence that . . . [D]efendants knew that Gibson was in danger or that any specific dangerous condition existed on 4 Block East."  *Id.*  Moreover, in *United States v. Murphy*, 653 F.2d 637, 642 (D.C. Cir. 1981), the *Murphy* court held that a pervasive risk had not been established where there was a six percent assault rate in the plaintiff's prison dormitory and there was no evidence that this rate

---

[2]  In *Rodriguez v. Connecticut*, 169 F. Supp.2d 39, 46 (2001), the *Rodriguez* court held that "Rodriguez's claim that [the officers in the prison] were watching television and were unable to respond promptly to the decedent implicates the three officers personally in [his] death."  In the *Rodriguez* case there was testimony that "on the night of the murder, an inmate in the decedent's cell told a corrections officer that he needed to get away from his cellmate, but that the officer told him to tell the unit manager in the morning."  *Id.*  In addition, the *Rodriguez* court stated that "a factfinder could infer that experienced corrections officers knew that [watching television] placed inmates at risk, particularly when there are allegations that someone in the decedent's cell complained to an officer about his cellmate."  *Id.* at 48.  The *Rodriguez* court determined that "[e]ven if, however, the officer's behavior that evening when watching television were to rise only to the level of negligence . . . to delay calling for medical attention when an inmate is hurt in order to avoid, presumably, risking discipline for watching television on duty, is not a reasonable response to risk."  *Id.*  In addition, the unit in question in *Rodriguez* was a "close custody unit with gang members designated as security risks."  *Id.*  The facts of *Rodriguez* differ markedly from the instant case.

7

was "outside the range of violence normally associated with this type of penal institution, or that any subset of prisoners suffered from an unusual risk of attack."

In the instant case, Plaintiff has presented no evidence that the guards had notice of a particular risk of harm to him, beyond that of the fact that the prison population included those with criminal histories housed in a confined environment. Therefore, Defendants' motion for summary judgment is granted on the ground of deliberate indifference to a substantial risk of harm to Plaintiff.

### B. Deliberate Indifference to Medical Treatment

To succeed on a claim of deliberate indifference to medical treatment, Plaintiff must satisfy two elements, an objective one and a subjective one. He must show that he had a "serious medical need," and that the defendant, aware of the need, acted with deliberate indifference to it. *Wilson v. Seiter,* 501 U.S. 294, 297 (1991).

A medical need is "serious" if it has been diagnosed by a physician as requiring treatment or is so obvious that a lay person would easily recognize the necessity for a doctor's attention. *Monmouth County Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). A serious ailment requires immediate attention or is potentially life-threatening: "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) (citations omitted). To establish a serious medical need, it is not necessary for a plaintiff to show that he suffered an actual, tangible physical injury from the defendants' alleged actions. *Boretti v. Wiscomb*, 930 F.2d 1150, 1154 (6th Cir. 1991). The fact that a plaintiff endured unnecessary pain and suffering is sufficient for an Eighth Amendment claim. *Id.* In

*Westlake v. Lucas,* 537 F.2d 857, 860 (6th Cir. 1976), the Sixth Circuit stated that "a prisoner who is needlessly allowed to suffer pain when relief is readily available does have a cause of action against those whose deliberate indifference is the cause of his suffering." "Whether a prisoner has suffered unduly by the failure to provide medical treatment is to be determined in view of the totality of the circumstances. In making this determination the trier of fact should consider the practicalities of the situation including the extent of the injury, the realistic possibilities of treatment, and the possible consequences to the prisoner of failing to provide immediate medical attention." *Id.*

"In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Delay in access to medical attention can violate the Eight Amendment when it is "tantamount to 'unnecessary and wanton infliction of pain.'" *Hill v. DeKalb Regional Youth Detention Center*, 40 F.3d 1176, 1187 (6th Cir. 1994) (quoting *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990)).

In his Complaint, Plaintiff alleges that "Defendants displayed a conscious disregard of the dangers that were apparent to Plaintiff and displayed a deliberate indifference to Plaintiff's safety and health." (Pl.'s Compl. at ¶ 34.) Plaintiff, however, has not created an issue of fact as to whether Defendant Parson acted with a "sufficiently culpable state of mind" in his administration of treatment to Plaintiff. Based on the undisputed evidence, Defendant Parson pursued medical attention for Plaintiff. He placed Plaintiff in a holding cell for approximately thirty to forty-five minutes, before moving him to the second floor medical ward where he was placed in another holding cell and later transferred to Detroit Receiving Hospital. (Pl.'s Dep. at 51-53; Pl.'s Mot. at

9

Ex. J; Defs.' Mot. at 6, Ex. G.)  During his deposition, Plaintiff testified that he did not remember whether he received any type of medical care on the second floor and he acknowledged that it was possible that he did receive some medical treatment on the floor.  (Pl.'s Dep. at 54.)  "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."  *Westlake*, 537 F.2d at 860.

During his deposition, Plaintiff testified that he suffers from chronic back pain, occasional blackouts, and blurry vision.  Plaintiff stated, however, he was at one time seeing a specialist at Sinai-Grace for his chronic back pain, but he no longer is.  (Pl.'s Dep. at 9.)  Relating to his blurred vision and occasional blackouts, Plaintiff testified that he has never seen a doctor for treatment of these conditions, nor does he wear glasses or contact lenses.  (*Id.* at 10-12.)  Moreover, Plaintiff testified that he suffered no detrimental effect as a result of the period between the assault and his arrival at Detroit Receiving Hospital.  (*Id.* at 70.)  Relating to the treatment he received from prison officials, Plaintiff testified:

> Q: So what I'm asking you is, what injury are you alleging that you suffered because of that three-hour delay?
> A: None.

* * *

> Q: Okay.  So the three-hour delay didn't cause you any additional injury?
> A: Just pain and suffering.

* * *

10

> Q: Okay.  Has any doctor told you that there was some type of injury to you because of the three hour delay?
> A: No.

(Pl.'s Dep. at 70-71.)

Relating to Plaintiff's overall satisfaction with the treatment he received at Detroit Receiving Hospital, Plaintiff testified:

> A: Was I satisfied with the treatment?  I mean, no.  I thought maybe they can do a little bit more for me.
> Q: What could they have done for you?
> A: Well, I'm not a doctor, so I don't know what they could have done for me.  But, I was just - - I wasn't too thrilled with the treatment I got.  You know, I felt like, you know, they didn't pay too much attention to me.
>
> * * *
>
> Q: Okay.  Have you had any doctors tell you that what Detroit Receiving Hospital did was medically insufficient or inadequate?
> A: No.  I didn't inquire, so.

(*Id.* at 57-58.)

Plaintiff has not identified deficiencies in the treatment he received and has not identified a genuine issue of fact to support Defendants' alleged deliberate indifference to a serious need for medical treatment.  Therefore, Defendants' motion is granted based on the lack of deliberate indifference to Plaintiff's medical treatment.

### C.  Municipal Liability

Section 1983 provides in relevant part that "every person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights . . . secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . [or] suit in equity."  42 U.S.C. § 1983.  A municipal corporation, however, cannot be liable for actions of its employees under a theory of *respondeat superior*.  *Monell v. Dep't of Soc.*

11

*Servs.*, 436 U.S. 658, 691 (1978). A municipality, however, may be directly liable for unconstitutional action taken pursuant to "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers . . . [or] for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Id.* at 690-91.

A single unconstitutional act cannot establish *Monell* liability unless there is also proof of some policy or custom that can be attributed to an official policymaker. *Okla. City v. Tuttle*, 471 U.S. 808, 823-24 (1985). Although a custom is generally a permanent and well-settled practice, *Doe v. Clairborne County*, 103 F.3d 495, 506 (6th Cir. 1996), *Monell* liability can be based on a single decision by an official policymaker as long as that official has "final authority to establish . . . policy with respect to the action ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-81 (1986). Exercise of authority, however, does not make one a final policymaker unless that exercise is unreviewable and unconstrained by superiors by superiors. *City of St. Louis v. Prapotnik*, 485 U.S. 112, 127 (1988). Imposing liability for such conduct would amount to finding liability based on *respondeat superior*. *Feliciano v. City of Cleveland*, 988 F.2d 649, 656 (6th Cir. 1993) (citing *Prapotnik*, 485 U.S. at 126.)

In the instant case, Plaintiff has pointed to no evidence that Defendant Wayne County employed a policy of "deliberate indifference to [the] safety and health of the inmates which were under their care " (Pl.'s Resp. at 19.) Plaintiff points to evidence that there were fewer guards employed on weekends and that guards sometimes went on the Internet and played videogames while at work. (Walker Dep. at 19-20;

Thompson Dep. at 22.)  Plaintiff, however, has not presented evidence that there was a custom that promoted a failure to respond to incidents such as the one Plaintiff experienced or promoted delayed medical treatment.

### IV.  CONCLUSION

IT IS ORDERED that Defendants' "Motion for Summary Judgment" [Dkt. # 50] is GRANTED.

      S/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  September 30, 2005

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, September 30, 2005, by electronic and/or ordinary mail.

      S/Lisa G. Teets
Case Manager and Deputy Clerk
(313) 234-5522